IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORPHA MARTIN, *Plaintiff,* v. ANDREW M. SAUL, Acting Commissioner of Social Security,[1] *Defendant.* | CIVIL ACTION NO. 16-117 |

**PAPPERT, J.** August 7, 2019

## MEMORANDUM

Orpha Martin seeks judicial review of the Commissioner of Social Security's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Judge Davis referred the case to Magistrate Judge Sitarski for a Report and Recommendation ("R. & R"). (ECF No. 14.) The case was reassigned to this Court after Judge Davis' retirement. (ECF No. 21.) Upon careful consideration of Martin's Brief and Statement of Issues in Support of Request for Review (ECF No. 12), the Commissioner's Response (ECF No. 13), Martin's Reply (ECF No. 15), Judge Sitarski's R. & R. (ECF No. 17), Martin's Objections (ECF No. 18), the Commissioner's Response (ECF No. 20) and the Administrative Record[2] (ECF Nos. 10 & 11), the Court

---

[1] At the time Martin filed her complaint, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration. On June 17, 2019, Andrew M. Saul succeeded Nancy A. Berryhill as Acting Commissioner. Thus, pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), Saul is substituted as the defendant in this action. *See* FED. R. CIV. P. 25(d); 42 U.S.C. § 405(g).

[2] The record, consisting of 1788 numbered pages, was uploaded to ECF. *See* (ECF Nos. 10-1–10-22, 11-1–11-24). The Court will cite to the record page numbers rather than ECF document numbers.

1

overrules Martin's objections and adopts the R. & R. denying her request for review and affirming the Commissioner's decision.

I

A

Martin applied for DIB on August 5, 2012, alleging disability beginning on March 21, 2011.[3]  (Administrative Record ("R.") 16, 148–49, 211.)  She graduated from nursing school with a nursing degree (RN) and Bachelor of Science in Nursing (BSN). (*Id.* at 212, 940.)  She has worked as a private duty staff nurse, a staff nurse for a state agency and a hospice nurse.  (*Id.* at 213.)

Martin seeks DIB due to a number of impairments, including bipolar disorder, depression, chronic back pain, diabetes, renal insufficiency and syncope.  (*Id.* at 211.) Because Judge Sitarski thoroughly presented the facts in her R. & R., *see* (R. & R. at 3–10), the Court summarizes only those facts relevant to Martin's objections.

With respect to Martin's mental health impairments, her mental health status examinations were consistently normal.  *See* (*id.* at 343, 416, 828, 833–34, 874, 920–21, 1683–84, 1693–94, 1725).  Medication and regular therapy kept her conditions stable. *See* (*id.* at 565–68, 824, 1037, 1063, 1166, 1653, 1724, 1742.)  In her Adult Function Report, Martin noted that she pays attention to and follows instructions, she does not need any special reminders to take care of herself or to take her medicine, she gets along with authority figures and she handles changes in her routine.  (*Id.* at 189–91, 193–95.)

---

[3]    At the administrative hearing, Martin amended her disability onset date to January 31, 2012.  (*Id.* at 37, 41–44.)

2

Psychologist Curt Nicholson treated Martin for over twenty years. (*Id.* at 927.) In a letter dated October 15, 2012, Dr. Nicholson offered his "lay opinion" that Martin was "obviously disabled." (*Id.* at 927–28.) He nonetheless noted that Martin's psychiatric medications have been "stable and adequate for many years" and that her "psychological functioning has been good enough for the past several years that she needs psychotherapy for only one hour every four weeks." (*Id.* at 927.)

On December 18, 2012, Dr. Robert Carey conducted a consultative psychological examination of Martin. (*Id.* at 937–45). Although Martin appeared depressed and tearful during the evaluation, Dr. Carey described Martin's judgment and insight as "fairly good," her speech as "well formed" and her thought processes as "clear." (*Id.* at 941–43). He diagnosed her with bipolar disorder while noting that she was "quite stable at this point in time." (*Id.* at 943.) Dr. Carey also found Martin moderately limited in her ability to carry out detailed instructions and respond appropriately to work pressures in a usual work setting. (*Id.* at 935.)

State agency psychologist Thomas Fink reviewed Martin's records and on December 31, 2012 diagnosed her with non-severe affective and anxiety disorders. (*Id.* at 85–86.) He found that she was "functioning well psychologically [and] stopped working recently due to her physical, not mental, condition." (*Id.* at 86.) In reviewing Dr. Carey's evaluation of Martin, Dr. Fink determined that Dr. Carey "overestimated the claimant's concentration problems." (*Id.*) Dr. Fink concluded that Martin could "understand and follow instructions, relate and communicate with others, persist at tasks, make decisions, and work a range of jobs within her physical limitations." (*Id.*)

Martin's physical impairments were similarly treated with medication and routine medical visits. Dr. Lisa Allen, a rheumatologist, saw Martin on March 8, 2012 for complaints of osteoarthritis and that her "legs [were] giving way without warning." (*Id.* at 872.) Dr. Allen encouraged Martin "to use her cane especially [out in] public as well as use a [PennDot] handicap placard. Additionally, [I] do think she should consider an application for disability as she is having significant difficulty participating in gainful employment." (*Id.* at 874.) Although Dr. Allen documented some focal weakness, Martin did not experience any neurological or musculoskeletal deficits. (*Id.* at 872.)

In the spring and early summer of 2012, Martin experienced lightheadedness, dizziness and hip pain. (*Id.* at 883, 1265, 1488, 1498–99.) An April 5, 2012 lumber MRI showed no change from an earlier 2008 MRI. (*Id.* at 23, 760). X-rays of Martin's hips and knees were normal, as were her stress echocardiogram and EKG. (*Id.* at 23, 529–30, 799, 805, 1333). In her Adult Function Report, Martin stated that she did not use a cane. (*Id.* at 195.)

On January 14, 2013, state consultative physician Michael Brown reviewed Martin's medical records and assessed her physical RFC. (*Id.* at 87–90). Dr. Brown determined that Martin could: lift twenty pounds occasionally and ten pounds frequently; stand and/or walk and sit about six hours in an eight-hour work day and occasionally climb ramps and stairs, balance, kneel, crouch, or crawl but never climb ladders, ropes or scaffolds. (*Id.* at 88.)

B

Martin's application for DIB was initially denied by the Social Security Administration on February 4, 2013. (*Id.* at 16, 94–98.) On March 6, 2013, she filed a request for a hearing before an Administrative Law Judge. (*Id.* at 103–04.) Martin and a vocational expert testified at the hearing on August 22, 2014. *See (id.* at 31–80). Martin testified that she continued to work after her alleged disability onset date until December of 2012. (*Id.* at 44–48.) She stated that her mental health issues did not affect her ability to work, and she could lift five pounds and stand for about five minutes before experiencing "severe back pain" that required her to sit down. (*Id.* at 62, 70–71.) Martin brought a cane to the hearing, stating that she needed the cane to walk "long distances" such as from the parking garage to the hearing. (*Id.* at 67.) The vocational expert testified that Martin performed her nursing duties at the light exertional level because she "never lifted more than twenty pounds at most of the jobs she's performed the last 15 years." (*Id.* at 72.) She also testified that someone with Martin's RFC could perform jobs as a nurse as actually performed by Martin but could not perform jobs as customarily performed because those job required a medium exertional level. (*Id.* at 73.)

On September 15, 2014, after reviewing the record and applying the five-step sequential evaluation process,[4] the ALJ held that Martin was not disabled under the

---

[4] The Commissioner has established a five-step process to determine whether claimants are disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security. *Hess v. Comm'r Soc. Sec.*, No. 18-2226, 2019 WL 3418953, at *2 (3d Cir. July 30, 2019) (citing *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010)). At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i)). If not, the ALJ proceeds to step two where he or she must determine whether the claimant has any "severe medically determinable physical or mental impairment," defined as one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.*

Social Security Act and denied her claim. (*Id*. at 13–25.) At step one, the ALJ determined that Martin had not engaged in any substantial gainful activity since January 31, 2012, the amended onset date. (*Id.* at 18.) At step two, the ALJ found that Martin had the following severe impairments: osteoarthritis, lumbar stenosis, stage 4 chronic kidney disease with anemia, obesity and hypertension. (*Id.* at 18–19.) At step three, the ALJ determined that the impairments, either alone or in combination, did not meet the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id.* at 20.) The ALJ proceeded to step four, finding that Martin had the RFC to perform light work except she should only occasionally crouch, stop and climb ramps or stairs. (*Id.* at 20–25.) Given the RFC assessment, the ALJ concluded that Martin was capable of performing her past relevant work as a nurse. (*Id.* at 25.)

Martin filed a request for review with the Appeals Council on October 10, 2014. (*Id.* at 8–10.) The Council denied the request on December 10, 2015, rendering the ALJ's decision final. (*Id.* at 1–7.) Martin filed this action on January 13, 2016, seeking judicial review of the ALJ's decision. (Compl., ECF No. 2.) She argued that: (1) the ALJ erred at step two of the evaluation by finding Martin's syncope and bipolar disorder to be non-severe impairments; (2) substantial evidence does not support the ALJ's evaluation of opinion evidence; (3) substantial evidence does not support the

---

(citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c)). If the claimant successfully demonstrates a "severe impairment," the ALJ proceeds to step three to assess whether the impairment meets or medically equals one of the listed impairments; if so, the claimant qualifies for disability. *Id*. (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)). If, however, the impairment does not meet or equal a listed impairment, the inquiry proceeds to step four where the ALJ determines whether the claimant has the "residual functional capacity" (RFC) to perform any past relevant work. *Id*. (citing *Id*. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv)). If the claimant can perform any past relevant work, he or she will not be found disabled. *Id*. If not, the fifth step requires the ALJ to consider "vocational factors" (age, education and past work experience) to determine whether the claimant is capable of performing other jobs existing in the national economy. *Id*. (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).

6

ALJ's RFC assessment; substantial evidence does not support the ALJ's credibility assessment; (4) the ALJ erred by not finding that Martin meets Medical Vocational Rule 201.06 and (5) the ALJ's finding that Martin could return to her past work as a nurse is not based on substantial evidence. (Pl.'s Br. 1–2, ECF No. 12.) Martin now raises four objections to Judge Sitarski's R. & R. which the Court overrules for the reasons that follow.

II

Upon designation, a magistrate judge may conduct hearings and submit proposed findings of fact and recommendations to a judge of the court for disposition. 28 U.S.C. § 636(b)(1)(B); *Dries v. Berryhill*, 2017 WL 4922011 at *2 (M.D. Pa. Oct. 31, 2017). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When no objections are made to the R. & R., "the court should, as a matter of good practice, 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Latorre v. Wetzel*, 2016 WL 3014874 at *1 (E.D. Pa. May 26, 2016) (quoting Fed. R. Civ. P. 72(b) advisory committee's note); *see also Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987) (explaining that judges should give some review to every R. & R.). For the portions of the R. & R. to which neither party objected, no clear error appears on the face of the record and the Court accordingly accepts Judge Sitarski's report.

The Court reviews *de novo* those portions of the R. & R. to which Martin objects. *See* 28 U.S.C. § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). The Court's role on review is to determine whether the ALJ's determinations were

supported by substantial evidence. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion." *Rutherford*, 399 F.3d at 552 (internal quotations omitted). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)).

In reviewing the ALJ's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the ALJ. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). "The ALJ resolves conflicts in the evidence, determines the evidence's credibility, and assigns the appropriate weight to be given such evidence." *D'angelo v. Colvin*, 2016 WL 930690 at *2 (E.D. Pa. Mar. 11, 2016) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) and *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 2004)). If the ALJ's decision is supported by substantial evidence, the Court may not set it aside "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). The ALJ's decision need only discuss the most relevant evidence concerning a claimant's disability, "but it must provide sufficient discussion to allow the reviewing Court to determine whether its rejection of potentially significant evidence was proper." *D'angelo*, 2016 WL 930690 at *1 (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)).

III

A

Martin argues that the ALJ erred in determining her bipolar disorder was a non-severe impairment at step two of the evaluation. *See* (Obj. at 2–3). Judge Sitarski affirmed the ALJ's conclusion, finding substantial evidence that Martin's bipolar disorder caused "no more than minimal restrictions" on her ability to work. (R. & R. at 13.)

At step two of the five-step sequential inquiry, the ALJ must determine whether the claimant has a medically severe impairment. *See Bowen v. Yuckert,* 482 U.S. 137, 140–41 (1987). A severe impairment significantly limits the claimant's physical or mental ability to do "basic work activities," including walking, standing, sitting, lifting, understanding simple instructions, responding to supervision and dealing with changes in a routine work setting. *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 144 (3d Cir. 2007) (citing 20 C.F.R. § 404.1521(b)). The claimant has the burden of showing that an impairment is severe. *Bowen v. Yuckert,* 482 U.S. at 146 n. 5.

Martin contends that Dr. Nicholson's and Dr. Carey's opinions contradict the ALJ's finding that her bipolar disorder is a non-severe impairment. Martin relies upon Dr. Nicholson's "lay opinion about her medical/neurophysiological status." (Obj. at 2) (citing R. 928). In his October 15, 2012 letter, Dr. Nicholson wrote that Martin "is obviously disabled . . . [and] that the professional medical records . . . will bear that out." (R. 928.) However, in that same letter, Dr. Nicholson asserted that Martin's "psychological functioning has been good enough for the past several years that she needs psychotherapy for only one hour every 4 weeks." (*Id.* at 927.) He also

9

determined that Martin's psychiatric medications have been "stable and adequate for many years." (*Id.*)

Martin also cites to Dr. Carey's consultative examination, in which he noted that Martin's "affect presented as somewhat flat [and] [h]er mood appeared to be depressed" and that Martin "became tearful quite often during the course of the evaluation *which was appropriate based on what she was discussing*." (*Id.* at 941) (emphasis added). Although Dr. Carey found that Martin's ability to concentrate is "mildly to moderately impaired by her mental health symptoms," (*id.* at 944), he also stated that Martin is "quite stable at this point in time," her thoughts were "clear, logical and goal-directed," (*id.* at 943).

Substantial evidence supports the ALJ's conclusion that Martin's bipolar disorder is non-severe. When asked by the ALJ at the hearing if her mental health affected her ability to work in any way, Martin testified, "Not recently." (*Id.* at 62.) Although Martin reported that she becomes "depressed quicker" when she is under "lots of stress," (*id.* at 189), she also cares for herself, spends time with others socially, pays attention to and follows instructions, gets along with authority figures and handles changes in her routine, (*id.* at 19, 189–91, 193–95). Mental health status examinations consistently show that Martin's intact memory, insight, judgment and thought processes. *See* (*id.* at 19, 558–564, 567). Even if the ALJ had erroneously concluded that Martin's bipolar disorder was non-severe, any error was harmless since she found in Martin's favor at step two of the evaluation. *See Rutherford v. Barnhart,* 399 F.3d at 553; *see also Salles*, 229 Fed. App'x at 145 ("Because the ALJ found in [the plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other

impairments were non-severe, any error was harmless."). Accordingly, the Court overrules this objection.

B

Martin next argues that the ALJ erred by discounting the medical opinions of treating physicians Drs. Allen and Carey, and assigning great weight to the opinions of state consultative examiners Drs. Brown and Fink.

"The ALJ—not treating or examining physicians or State agency consultants— must make the ultimate disability and [residual functional capacity] determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The "law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011) (citing *Adorno v. Shalala*, 40 F.3d 43, 47–48 (3d Cir. 1994)) (finding that the ALJ's decision to not adopt the opinion of plaintiff's treating psychiatrist was supported by substantial evidence where the ALJ clearly explained why she gave greater weight to another opinion). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 416.927(c)(4). Accordingly, an opinion offered by the claimant's "treating source" is given controlling weight so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* at § 416.927(c)(2). "State agent opinions merit significant consideration as well." *Chandler*, 667 F.3d at 361 (citing SSR 96–6p) ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to

11

consider their findings of fact about the nature and severity of an individual's impairment(s). . . .").

First, Martin argues that the ALJ should have given controlling weight to the opinion of her treating rheumatologist, Dr. Allen, who stated that Martin "should consider appl[ying] for disability as she is having significant difficulty participating in gainful employment." (R. 874.) Substantial evidence supports the ALJ's finding that Dr. Allen "provided no clinical findings to support this conclusory opinion, and it appears to be inconsistent with the medical evidence." (*Id.* at 23.) At the March 8, 2012 visit, Dr. Allen found that Martin did not experience dizziness, tingling, seizures, weakness and headaches. (*Id.* at 872.) Although Dr. Allen noted some "focal weakness" (*id.*), she described Martin as "alert and oriented to person, place and time," (*id.* at 874). Dr. Allen did not document any neurological or musculoskeletal deficits in her examination. (*Id.*) Moreover, Dr. Allen's opinion is contradicted by other medical evidence. Despite Martin's complaints of back pain, her April 2012 MRI showed an "unchanged multilevel discogenic degeneration" from her 2008 MRI. (*Id.* at 760.) With respect to using a cane, the majority of Martin's medical records noted normal gait. (*Id.* at 23, 801, 805, 827, 921, 987, 1011, 1337, 1449). Martin also stated in her September 2012 Adult Function Report that she did not need to use a cane. (*Id.* at 195.)

Martin next contests the "limited weight" the ALJ afforded to Dr. Carey's opinion. (*Id.* at 24.) The ALJ found that his opinion was based on an "isolated examination" of Martin and "heavily rel[ied]" on Martin's subjective reports rather than objective criteria. (*Id.*) The ALJ highlighted that Dr. Carey noted that "the *claimant* 'denied having any particular memory issue' and that the *claimant* noted 'that she does

have some issues with concentration.'" (*Id.*) (emphasis in original). The record confirms the ALJ's finding because Dr. Carey did not conduct any independent testing before concluding that Martin was moderately restricted in carrying out detailed instructions.

Substantial evidence supports the ALJ's assignment of great weight to the opinions of Drs. Fink and Brown. (*Id.* at 23–24.) Dr. Fink determined that Martin's mental impairment was non-severe. (*Id.* at 85–86.) Martin testified at the administrative hearing that her mental symptoms did not affect her ability to work. (*Id.* at 62.) She reported that her "depression [was] stable" in 2012. (*Id.* at 895, 1526–27.) Medical records reflected normal mental status examinations. *See* (*id.* at 324, 343, 416, 1508, 1653, 1657, 1680, 1683–84, 1690). Moreover, Dr. Brown found that Martin could perform light work with postural limitations. (*Id.* at 24.) Objective tests like x-rays and echocardiograms confirm his determination. *See* (*id.* at 407, 529–32, 534, 742–54, 759–60, 769–81, 831, 836, 1468–69). Clinical findings also showed normal gait, range of motion and muscle strength. *See* (*id.* at 23, 324, 416, 447, 805, 827, 834, 839–40, 844, 874, 921, 954, 987, 1011, 1337, 1449, 1473, 1507–08, 1546, 1663). Accordingly, the Court overrules this objection.

C

Martin challenges Judge Sitarski's conclusion that the ALJ "sufficiently considered" her obesity in the RFC assessment. *See* (Obj. at 5–6) (quoting R. & R. at 23–24). Specifically, Martin asserts that the ALJ failed to properly consider "Martin's inability to stand and walk for prolonged periods because of the combination of her obesity with osteoarthritis and lumbar stenosis." (*Id.* at 6.)

13

In *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), and *Diaz v. Commissioner of Social Security*, 577 F.3d 500 (3d Cir. 2009), the Third Circuit Court of Appeals offered guidance on how an ALJ should evaluate obesity in the five-step sequential evaluation. In *Rutherford*, the plaintiff argued that the ALJ erred by failing to explicitly consider her weight throughout the disability determination. 399 F.3d at 552. The plaintiff alleged disability due to back and arm impairments but never mentioned obesity as contributing to her inability to work beyond a "generalized assertion that her weight made it more difficult for her to stand, walk and manipulate her hands and fingers." *Id.* The Third Circuit explained that although the ALJ did not explicitly discuss the plaintiff's obesity, he adopted the limitations suggested by specialists and reviewing doctors who were cognizant of her weight. *Id.* The court concluded that the ALJ's adoption of their conclusions was a "satisfactory if indirect consideration" of the plaintiff's obesity. *Id.*

In *Diaz v. Commissioner of Social Security*, the ALJ held at step two that the plaintiff's obesity was a "severe impairment." 577 F.3d at 504. At step three, however, he failed to consider the impact of that obesity in combination with the plaintiff's other impairments. *Id.* The Third Circuit held that the ALJ had erred, noting that "an ALJ must clearly set forth the reasons for his decision" and "conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." *Id.* (citation omitted). The court distinguished *Rutherford*, noting that the plaintiff there had not asserted obesity as an impairment or argued that it impacted her job performance. It further held that "[a]lthough in *Rutherford* we expressed some willingness to view the reference to the reports of the claimant's examining physicians

14

as constituting adequate, implicit treatment of the issue by the ALJ, we decline to do so here, where Diaz's obesity was urged, and acknowledged by the ALJ, as a severe impairment." *Id.*

Martin neither alleged obesity as a basis for her disability nor testified that it limited her ability to engage in work-related activities. The ALJ nonetheless recognized Martin's obesity as a severe impairment. (R. 18.) After acknowledging obesity as a severe impairment, *Diaz* instructs that the ALJ is required to "meaningfully consider the effects of a claimant's obesity, individually and in combination with [his] impairments, on [his] workplace function at step three and every subsequent step." 577 F.3d at 504. Meaningful consideration requires that the ALJ "provide a 'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion. . . ." *Id. Cf. Thorne v. Colvin*, No. 13-2139, 2015 WL 3498642, at *4 (E.D. Pa. June 3, 2015) (finding error where ALJ recognized plaintiff's obesity but did not mention it again in his decision).

Here, the ALJ discussed Martin's obesity at each step of the sequential analysis. At step three, the ALJ stated that Martin's obesity "does not increase the severity of [her] coexisting impairments to the point where the combination meets any listing impairment. Moreover, no medical source designated by the Commissioner to make equivalency findings has indicated the claimant's condition medically equals a listed impairment." (R. 20.) In assessing Martin's RFC, the ALJ stated, "[r]ecords show a history of osteoarthritis and lumbar spinal stenosis, complicated by obesity, but the severity of the [Plaintiff's] symptoms would allow [her] to perform a range of light work." (*Id.* at 23.)

15

Even if the ALJ erred in not adequately addressing Martin's obesity, the error was harmless. Evidence in the record does not support a conclusion that Martin's obesity rendered her unable to work. When filling out her Disability Report, Martin documented her height and weight but did not identify obesity as a condition that limited her ability to work. (*Id.* at 211.) She did not mention obesity as one of her physical impairments at the administrative hearing. *See* (*id.* at 31–36); *see, e.g.*, *Jones v. Colvin*, No. 11-6698, 2013 WL 5468305, at *1 (E.D. Pa. Oct. 1, 2013) (finding failure to adequately address plaintiff's obesity harmless error where plaintiff "failed to mention obesity when the ALJ asked him why he was unable to work").

Martin's medical reports do not identify her obesity as a cause of her functional limitations. Martin argues that her primary care physician noted, "Patient is overweight and has had multiple orthopedic issues. Thus her having hip pain is not surprising." (R. 1275.) His note does not indicate, however, that Martin's obesity limited her ability to work in any way. Martin fails to point to any evidence that supports a finding that obesity limited her ability to work. Accordingly, remand is not warranted. *See Woodson v. Comm'r of Soc. Sec.*, 661 Fed. App'x 762, 765–66 (3d Cir. 2016) (determining that ALJ did not commit reversible error where plaintiff did not point to specific medical evidence demonstrating that his obesity, in combination with other impairment, was sufficiently disabling).

D

Finally, Martin argues that the ALJ erred in finding that she could return to her past relevant work as a nurse. *See* (Obj. at 6–7). At step four of the evaluation, the claimant bears the burden of demonstrating an inability to return to past relevant

work. *See Plummer*, 186 F.3d at 428. The ALJ must consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Social Security Regulation 82–62 sets forth the evidence that an ALJ should consider in making this determination:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 123 (3d Cir. 2000) (citing S.S.R. 82–62). The record can contain substantial evidence that the claimant retains the ability to work as actually performed or as generally performed. *Garibay v. Comm'r of Soc. Sec.*, 336 Fed. App'x 152, 159 (3d Cir. 2009).

The ALJ's finding that Martin could perform her past relevant work as a nurse as those jobs were actually performed is supported by substantial evidence in the record. The ALJ cited to Martin's own descriptions of her past relevant work. (R. 25, 202–09.) In those reports, Martin described her various nursing jobs as minimally requiring—or not requiring at all—standing, climbing, kneeling, crouching and crawling. (*Id.* at 203–08.) She also indicated that she regularly walked between half an hour and four hours per day and stood between half an hour and two hours per day. (*Id.*).

The ALJ's finding was consistent with the vocational expert's testimony. (*Id.* at 25.) At the hearing, the ALJ asked the vocational expert whether someone with the RFC to perform the full range of light work, but was limited to occasional crouching, stooping, and climbing ramps and stairs, could perform work as a nurse as it was actually performed previously by Martin. (*Id.* at 72.) The vocational expert testified that Martin reported that she did not need to crouch, stoop, or climb ramps and stairs in her past relevant work, and that the Dictionary of Occupational Titles does not list those requirements for customarily performed nursing jobs. (*Id.* at 72–73.) She stated that Martin performed her nursing duties at the light exertional level because Martin "never lifted more than twenty pounds at most of the jobs she's performed the last 15 years." (*Id.* at 72.) Thus, the vocational expert testified that someone with Martin's RFC could perform jobs as a nurse as actually performed by Martin but could not perform jobs as customarily performed because those job required a medium exertional level. (*Id.* at 73.) Based on Martin's testimony and the vocational expert's testimony, the ALJ concluded that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*)

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.